[Cite as *In re Estate of Coughenour*, 2026-Ohio-3060.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


IN RE: : 

                                    CASE NO. CA2025-10-028

   ESTATE OF EDWARD M. : 
   COUGHENOUR, JR.                               OPINION AND
                                                      JUDGMENT ENTRY
                   :                            8/10/2026

                   : 

                   : 

                   : 


APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 20231042


The Law Offices of Brian Stewart, LLC, and Brian S. Stewart, for appellee.

Dinsmore & Shohl LLP, and Kelli J. Amador, Michael J. Bonasera, and Gregory P. Mathews, for appellant.


## O P I N I O N

**PIPER, J.**

{¶ 1} Appellant, Dara Barker, appeals from the order of the Madison County Court

of Common Pleas, Probate Division, which denied her motion to remove appellee, Justin

Adams, as the executor of the estate of Edward Coughenour. For the reasons set forth below, we affirm.

### I. Factual and Procedural Background

{¶ 2}   Edward Coughenour executed his Last Will and Testament on January 14, 2021. The will named Justin Adams, Coughenour's close friend, as executor. It devised to Adams all real property in Ohio owned by Coughenour. It also devised to Dara Barker, his daughter, Coughenour's 40 percent interest in a 1,900-acre parcel of land in Tennessee. Adams and Barker were named equal beneficiaries of Coughenour's residuary estate. The will further provided that all of Coughenour's just debts were to "be paid from my estate." That same day, Coughenour executed a transfer-on-death affidavit directing that all of his interest in real property located in Madison County, Ohio, be transferred to Adams upon Coughenour's death.

{¶ 3}   Both the Tennessee property and the Madison County, Ohio property were subject to a lien in favor of Farm Credit Mid-America securing the sum of $2,715,000. The lien arose from a promissory note, a commercial deed of trust as to the Tennessee property, and a mortgage as to the Madison County properties, all executed by Coughenour on December 18, 2020. The Tennessee property was valued at $6,321,500.

{¶ 4}   Coughenour died on February 6, 2023, and Adams was appointed executor of the estate. Farm Credit then filed a claim against the estate for the full amount due, asserting that Coughenour's death constituted an event of default and accelerating the balance owed. In order to prevent the accrual of significant interest debt for the Estate, as well as for his Madison County properties he received upon Coughenour's death, in 2024 Adams made a loan to the estate in excess of $100,000 in order to pay an installment payment to Farm Credit. Adams thereafter commenced an action in Tennessee to sell the Tennessee property to satisfy the Farm Credit debt. Barker moved

- 2 -

to remove Adams as executor, arguing that the proposed sale would effectively disinherit her for Adams' benefit. Specifically, Barker asserted that selling the Tennessee property would consume her 40 percent interest while also extinguishing the mortgage liens on the Madison County properties that passed to Adams under the transfer-on-death affidavit.

{¶ 5} After briefing, the Madison County Probate Court took the matter under advisement. In a September 22, 2025 entry, the probate court found that Adams was acting in accordance with the will and that no basis existed to remove him as executor under R.C. 2109.24 or 2113.18. The court therefore denied Barker's motion to remove Adams as executor.

{¶ 6} Barker now appeals, raising a single assignment of error with four issues.

## II. Legal Analysis

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE PROBATE COURT ERRED IN DENYING APPELLANT'S MOTION TO REMOVE THE TESTATOR'S CHOSEN EXECUTOR.

{¶ 9} In her single assignment of error, Barker argues that the trial court erred in not removing Adams as executor because (1) he has a conflict of interest that mandates his removal; (2) the probate court improperly relied on extrinsic evidence to discern Coughenour's intent in his will; (3) the probate court should have held a hearing on Barker's motion to remove Adams as executor; and (4) Adams should have been required to first sell other real property before the 40 percent interest in the Tennessee land. We disagree with Barker and find Adams followed the unambiguous directions of Coughenour's will. Therefore, the trial court committed no error in not removing Adams as executor.

{¶ 10} The removal of a fiduciary is within the sound discretion of the probate court, and a reviewing court will not reverse the trial court's order unless it appears that the

lower court abused its discretion. *In re Estate of Perry*, 2008-Ohio-351, ¶ 30-31 (12th Dist.). R.C. 2109.24 and 2113.18 together provide the statutory basis for removing a fiduciary or executor. *Everhart v. Everhart*, 2014-Ohio-2476, ¶ 52 (12th Dist.).

{¶ 11} Under R.C. 2109.24, "[t]he court may remove any fiduciary . . . for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the property, testamentary trust, or estate that the fiduciary is responsible for administering demands it, or for any other cause authorized by law." Further, pursuant to R.C. 2113.18(A), "[t]he probate court may remove any executor or administrator if there are unsettled claims existing between the executor or administrator and the estate that the court thinks may be the subject of controversy or litigation between the executor or administrator and the estate or persons interested in the estate."

Conflict of Interest

{¶ 12} Barker first argues that the probate court erred in failing to remove Adams as executor because he is violating his duty of trust and loyalty to her by seeking to sell the Tennessee property and using the proceeds to eliminate the mortgage on the Madison County properties he received from Coughenour pursuant to the transfer on death affidavit. Barker argues Adams is not a disinterested fiduciary and he has placed his own personal interests above those of the estate and its other beneficiary (her).

{¶ 13} However, Item I of the will provides "I direct that all my legal debts . . . be paid from my estate." R.C. 2127.02 dictates

> As soon as an executor or administrator ascertains that the personal property in the possession or under the control of the executor or administrator is insufficient to pay all the debts of the decedent, together with the allowance for support to the surviving spouse, minor children, or surviving spouse and minor children of the decedent as provided in section 2106.13 of the Revised Code, and the costs of administering the estate, the executor or administrator shall commence a civil action in the probate court for authority to sell the decedent's

real property.

{¶ 14} There is no dispute that Coughenour's personal estate is insufficient to pay the estate's debts, including the Farm Credit debt. The Madison County properties transferred to Adams on Coughenour's death and thus are not estate assets and not answerable for estate debts. Therefore, in accordance with Ohio law and the will, Adams sought to sell the Tennessee property to pay the estate's debts. Barker has offered no viable alternative.

{¶ 15} Barker also asserts that, pursuant to R.C. 2113.18(A), Adams' 2024 loan to the estate is a subject of controversy or litigation and otherwise constitutes a conflict of interest requiring his removal as executor. Nevertheless, "the fact that the representative is a creditor of the estate has been held not alone sufficient ground for removal." *In re Estate of Perry*, 2008-Ohio-351, ¶ 32 (12th Dist.). Although loaning money to the estate to prevent default on the Farm Credit debt benefitted Adams by preventing foreclosure of the mortgages on the Madison County properties, it likewise benefitted the estate by preventing a foreclosure sale of the Tennessee property.[1] We find the trial court did not abuse its discretion when it determined there was no conflict of interest or breach of fiduciary duty on Adams' part.

### Extrinsic Evidence

{¶ 16} Second, Barker argues that the probate court improperly relied on extrinsic evidence when interpreting Coughenour's intent in his will, specifically extrinsic evidence of the estranged relationship between Coughenour and Barker, and Adams' affidavit. It is well settled that judgments involving the construction of a will are reviewed by appellate

---

1. In her reply brief, for the first time, Barker argues that the sale of the Tennessee property may not move forward under Tennessee law because Coughenour's 40 percent interest in the Tennessee property automatically vested in Barker upon Coughenour's death. As these arguments were not raised in her initial brief, we will not consider them. Nevertheless, even if the sale of the Tennessee property may not go forward, that does not mandate Adams' removal as executor.

courts on a de novo basis as a matter of law. *Radzisewski v. Szymanczak*, 2012-Ohio-2639, ¶ 15 (8th Dist.); citing *Church v. Morgan*, 115 Ohio App.3d 477, 481 (4th Dist. 1996). Courts may consider extrinsic evidence to determine the testator's intention only when the language used in the will creates doubt as to the meaning of the will. *Id.*

{¶ 17} Upon review, it is clear from the four corners of the will that the Farm Credit debt would be paid from the sale of the Tennessee property. Although the will lists *both* the Tennessee and Madison County properties as estate assets, the transfer on death affidavits that transfer the Madison County properties to Adams supersede the will. Pursuant to R.C. 5302.23(B)(9), "Any transfer on death of real property or of an interest in real property that results from a transfer on death designation affidavit designating a transfer on death beneficiary is not testamentary. That transfer on death shall supersede any attempted testate or intestate transfer of that real property or interest in real property." Accordingly, the Madison County properties were not part of the estate, leaving only the Tennessee property to be sold in order to pay for the estate's debts. In this regard, it was not improper for the probate court to consider the transfer on death affidavits along with the will.

{¶ 18} As the probate court found, Coughenour had knowledge of the debt when he signed the will and the transfer on death affidavits. Although he could have inserted an exoneration clause in his will to protect Barker's interest in the Tennessee property, he did not. Therefore, we determine that the will intended to pay the estate's debts from the Tennessee property. Although it may have been unnecessary for the probate court to take note of Coughenour's estranged relationship with Barker, it nevertheless correctly determined that the will directs the executor to pay all estate debts from the estate assets, namely the Tennessee property.

### Necessity of a Hearing

{¶ 19} Third, Barker argues that the probate court should have held a hearing on her motion to remove Adams as executor when it considered extrinsic evidence. Nevertheless, "the purpose of such a hearing is to allow the fiduciary to respond to the motion for removal and to present evidence in his defense." *In re Estate of Hoppes*, 2014-Ohio-5749, ¶ 15 (12th Dist.). When the individual seeking a hearing is not the fiduciary, but rather the person seeking removal of the fiduciary, a trial court is not required to hold a hearing. *Id*. "The court may deny the motion for removal without a hearing where the motion and documentary evidence presented demonstrate that removal is unwarranted." *Id.*

{¶ 20} Here, a hearing was unnecessary. The will and relevant transfer on death affidavits were not ambiguous and the probate court properly determined that removal of Adams as executor was unwarranted.

### Sale of Other Property First

{¶ 21} Finally, Barker argues that Adams is required by R.C. 2107.53 to first devote undevised real property to the payment of the estate debts before real property that is devised may be devoted to the payment of debts. However, Barker does not identify in her brief which property could be sold, or what value could be realized, sufficient to satisfy the estate's debts. As to undevised real property, Coughenour's estate holds a trailer in Florida of insubstantial value and parcel of real property in West Virginia valued at $32,000. Adams does not object to applying the proceeds from the sale of these to the payment of the estate's debts, nevertheless, the sale of the Tennessee property remains necessary because these other property holdings are woefully insufficient to pay the Farm Credit debt.

{¶ 22} R.C. 2107.53 states

> When part of the real property of a testator descends to the testator's heirs because it was not disposed of by the testator's will, and the testator's personal property is insufficient to pay the testator's debts, the undevised real property *shall be chargeable first with the debts*, as far as it will go, in exoneration of the real property that is devised, unless it appears from the will that a different arrangement of assets was made for the payment of the testator's debts, in which case the assets shall be applied for that purpose in conformity with the will.

(Emphasis added.). Although the estate's undevised real property is *chargeable first with the debts*, there is no requirement that it must be *sold first* before any devised property may be sold—particularly where the value of the undevised property is obviously insufficient to satisfy the estate's debts.

{¶ 23} The trial court did not err in denying Barker's motion to remove Adams as executor of the estate. Barker's assignment of error is overruled.

### III. Conclusion

{¶ 24} For the reasons outlined above, and having now overruled Barker's assignment of error, Barker's appeal is denied.

{¶ 25} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.

- 9 -

---

# J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Madison County Court of Common Pleas, Probate Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Robin N. Piper, Judge*

*/s/ Mike Powell, Judge*